IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN OLIVER | : | CIVIL ACTION |
| | : | |
| v. | : | No. 23-3487 |
| | : | |
| WHEELS AMERICA | : | |
| PENNSYLVANIA, LLC | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez**                                                                                         **December 16, 2025**

      Plaintiff John Oliver brings this action alleging his former employer, Defendant Wheels American Pennsylvania, LLC ("WAP"), failed to pay him overtime and terminated him in retaliation for complaining about the lack of overtime pay in violation of the Fair Labor Standards Act ("FLSA") and Pennsylvania Minimum Wage Act ("PMWA"). Although WAP initially appeared and answered Oliver's Complaint, it failed to participate in discovery or to comply with the Court's discovery orders. After obtaining entry of WAP's default as a sanction for its discovery violations, Oliver now moves for a default judgment. The Court will grant Oliver's motion and enter a default judgment in the amount of $229,038.20, which accurately reflects his damages and attorneys' fees and costs.

**BACKGROUND**

      In May 2019, John Oliver began working the night shift in WAP's production department repairing and producing wheels. Oliver was initially paid $5 per wheel completed. When he began his employment, employees did not have to clock in and out, but they were required to do so starting September 2022. Once Oliver began clocking in and out, he noticed his worked hours did not match the hours on his paystubs. On October 26, 2022, Oliver sent a text message to his supervisor Dave Pagliaro stating he should be paid overtime but received no response on his

1

overtime. Oliver also pursued the issue of overtime unsuccessfully with WAP's Human Resources Manager, Cheryl Bitner, on October 31, 2022. In both communications, Oliver specifically cited to the FLSA as the basis for his inquiry and claim for overtime. On November 10, 2022, WAP notified Oliver that he and his team would be moved to the day shift. Oliver messaged Bitner claiming this change was made in retaliation for asking about overtime pay. WAP terminated Oliver six days later, on November 16, 2022, without giving him an official reason for his termination. Oliver claims he was terminated in retaliation for his protected FLSA activity.

On September 7, 2023, Oliver filed the complaint in this action, alleging violations of the FLSA and PMWA. WAP filed its answer on November 3, 2023. The Court held a Rule 16 conference on November 20, 2023 and entered a case management order setting a March 11, 2024 discovery deadline. In March 2024, counsel for WAP informed the Court that the company planned to file for bankruptcy. On March 15, 2024, the Court stayed the case until April 14, 2024, instructing the parties to "immediately resume discovery" if WAP had not filed for bankruptcy by that date. When WAP did not file for bankruptcy by April 14, 2024, the Court issued an amended case management order with a new discovery deadline of June 10, 2024. On May 10, 2024, Oliver filed an unopposed motion to compel WAP to respond to Oliver's discovery requests. The Court granted Oliver's motion on May 31, 2024, and ordered WAP to respond by June 10, 2024. On June 11, 2024, Oliver informed the Court that WAP had failed to respond. Oliver then filed a motion for sanctions, which WAP did not oppose. On August 7, 2024, the Court granted the motion and directed the Clerk of Court to enter WAP's default. On February 26, 2025, WAP's counsel Thaddeus Mikulski, Jr. filed a motion to withdraw.[1] After a hearing, the Court granted

---

[1] As the basis for his motion, Attorney Mikulski stated his "continued representation of Wheels America Pennsylvania LLC is untenable as its representatives have failed to communicate with me and I have been advised that defendant is a defunct corporation without any assets and

2

Attorney Mikulski's motion to withdraw on April 21, 2025.  On July 22, 2025, Oliver filed the instant Motion to Enter Default Judgment.  The Court held a hearing on December 10, 2025 to ascertain Oliver's damages.  Oliver testified at the hearing regarding the factual basis of his Complaint and his resulting damages.  WAP failed to appear at the hearing despite receiving notice via mail.

**LEGAL STANDARD**

Once a party moves for a default judgment under Federal Rule of Civil Procedure 55(b), a district court has significant discretion to determine whether that remedy is appropriate. *See Zurich Am. Ins. Co. v. Gutowski*, 644 F. Supp. 3d 123, 131-32 (E.D. Pa. 2022). In making this determination, a district court must consider three factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citation omitted).  In assessing the second factor, courts may presume absent defendants have no meritorious defense because it is "not the court's responsibility to research the law and construct the parties' arguments for them." *Zurich*, 644 F. Supp. 3d at 140 (citation omitted).  Other factors relevant to the determination whether to grant a default judgment including whether the complaint presents a legitimate cause of action, whether service was proper, and whether the court has jurisdiction. *See id.* at 132.  In entering a default judgment, a court accepts the factual allegations of the complaint as true. *PPG Indus. Inc v. Jiangsu Tie Mao Glass Co. Ltd.*, 47 F.4th 156, 161 (3d Cir. 2022).  Statements pertaining to the award of damages, conclusory allegations, and legal conclusions need not be accepted. *Zurich*, 644 F. Supp. 3d at 133.

---

hence there are no funds to pay me for any legal services rendered on any application for a default judgment." Dkt. No. 22.

**DISCUSSION**

The Court will grant Oliver's motion for default judgment. A review of the Complaint indicates that Oliver has legitimate FLSA and PMWA claims. The Court will presume WAP has no meritorious defenses because of its unexcused absence from the case. WAP is also fully culpable for its delay and failure to participate in this case.[2] Moreover, a failure to enter default judgment will prejudice Oliver, who has experienced economic hardships since losing his job with WAP. The Court is also persuaded entry of a default judgment is appropriate because WAP has been properly served, and the Court has jurisdiction under 28 U.S.C. § 1331.

When entering a default judgment, a court must determine the amount of damages, unless the plaintiff's claim is for a sum certain. *PPG Indus.*, 47 F.4th at 161. Plaintiffs bear the burden of proving their damages, although damages need not be proven with "mathematical certainty, but only with reasonable certainty, and evidence of damages may consist of probabilities and inferences." *Id.* (citation omitted).

Oliver seeks $229,038.20 in damages, consisting of $68,400.00 in unpaid overtime compensation, $68,400.00 in liquidated damages, $80,433.00 in back pay damages, $10,761.25 in attorneys' fees, and $1,043.95 in litigation costs. Oliver additionally seeks emotional distress and punitive damages as well as post-judgment interest at the legal rate until the judgment is satisfied. The Court finds Oliver testified credibly at the hearing and is entitled to recover his compensatory damages, attorneys' fees, and costs, but not emotional distress or punitive damages.

Under the PMWA, employees "shall be paid for overtime not less than one and one-half times the employe[e]'s regular rate . . . for hours in excess of forty hours in a workweek." 43 Pa.

---

[2] The full scope of WAP's delay and noncompliance with this Court's directives is outlined in this Court's order granting sanctions on August 7, 2024. *See* Dkt. No. 21. WAP has not meaningfully participated in any of the proceedings in this action since March 14, 2024.

4

Stat. § 333.104(c); *Chevalier v. Gen. Nutrition Centers, Inc.*, 220 A.3d 1038, 1051 (Pa. 2019). Employees can bring suit to recover their unpaid wages under this statute. 43 Pa. Stat. § 333.113. Similarly, under the FLSA, employees must be paid overtime, equal to 1.5 times their regular rate of pay for all hours worked in excess of 40 hours per week. 29 U.S.C. § 207(a)(1). "An employer who violates the [overtime] provisions of . . . section 207 . . . shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages." *Brooks v. Vill. of Ridgefield Park*, 185 F.3d 130, 137 (3d Cir. 1999) (citing 29 U.S.C. § 216(b)). Section 260 of the Portal–to–Portal Act "permits the district court in its sound discretion to withhold or reduce the amount of liquidated damages 'if the employer shows . . . that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA].'" *Id.* (citing 29 U.S.C. § 260). "If the employer fails to come forward with plain and substantial evidence to satisfy the good faith and reasonableness requirements, the district court is without discretion to deny liquidated damages." *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 907-08 (3d Cir. 1991) (quoting *Williams v. Tri-County Growers, Inc.*, 747 F.2d 121, 129 (3d Cir. 1984)).

Because WAP has defaulted on Oliver's failure to pay overtime claim, Oliver is entitled to his unpaid overtime compensation. As noted, WAP has refused to engage in any discovery with Oliver. As a result, Oliver does not have access to evidence such as paystubs, timesheets, and employment records, which would permit him to prove his damages to a mathematical certainty. Absent such evidence, the Court may rely on Oliver's Motion to Enter Default Judgment, Oliver's testimony at the damages hearing, and the limited documentary evidence presented at the hearing. Oliver reported his hourly rate was $20.00 per hour, making his overtime rate $30.00 per hour. He

5

also stated he had worked a total of 60 hours each week, including 20 hours of overtime. He accrued approximately 2,280 overtime hours between September 7, 2020, and November 16, 2022. The Court finds Oliver's testimony on these issues is credible. So, Oliver is entitled to $68,400.00 in unpaid overtime compensation. Oliver is also entitled to the same amount ($68,400.00) in liquidated damages under the FLSA because WAP has failed to provide any evidence that its actions were reasonable and in good faith.

Turning to Oliver's retaliation claim, an employer who engages in retaliation under the FLSA "shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of . . . this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost." 29 U.S.C. § 216(b). Oliver is therefore entitled to back pay from November 16, 2022, the date he was terminated, to the date of his Motion for Entry of Default Judgment on July 22, 2025, reduced by his earnings at his subsequent jobs during this period. These back pay damages total $80,433.00.[3]

---

[3]   Oliver made approximately $800.00 a week based on his normal pay rate of $20.00 per hour for 40 hours a week. He also estimated he worked 20 hours of overtime per week for which he should have been paid the overtime rate of $30.00 per hour, for a total of $600.00 per week in overtime. Oliver is therefore entitled to back pay of $1,400.00 per week. The time between his termination from WAP and the filing of the default judgment motion is 140 weeks, producing a total back pay amount of $196,000.00.

After being terminated from WAP, Oliver worked fabrication and welding jobs. He worked at Aerial staring on February 6, 2023 ending on July 12, 2023, where he worked 40 hours per week and was paid $20.00 per hour, totaling $17,920.00. Oliver worked at MCS from July 12, 2023 to October 6, 2023, where he worked 40 hours per week and was paid $25.00 per hour, totaling $12,400.00. After MCS shut down, Oliver returned to Aerial on October 6, 2023 until August 4, 2024, where he worked 30 hours per week due to trade school and was paid $20.00 per hour, totaling $26,040.00. Oliver then worked at Container Research from August 4, 2024 to November 11, 2024, where he worked 40 hours per week and was paid $26.00 per hour, totaling $13,832.00. Oliver then began his current job at Humphrys Awnings on November 11, 2024, where he works 40 hours per week and is paid $31.25 per hour from November 11, 2024 through the date of his Motion for Entry of Default Judgment, totaling $45,375.00. His subsequent earnings total $115,567.00. The difference between the two amounts is $80,433.00.

While neither the Supreme Court nor the Third Circuit have addressed whether punitive damages are available under the FLSA, courts within the Third Circuit and elsewhere have interpreted the statute to authorize punitive damages for retaliation claims. *See Shroyer-King v. Mom-N-Pops, LLC*, No. 20-1558, 2021 WL 5055662, at *4 (W.D. Pa. Nov. 1, 2021) (acknowledging punitive damages are available for a retaliation claim under the FLSA); *Marrow v. Allstate Sec. & Investigative Servs., Inc.*, 167 F. Supp. 2d 838, 846 (E.D. Pa. 2001) ("[T]he second sentence of § 216(b) allows a FLSA plaintiff to obtain punitive damages against an employer who violates the provisions of § 215(a)(3)."); *see also Shea v. Galaxie Lumber & Const. Co., Ltd.*, 152 F.3d 729, 735 (7th Cir. 1998) ("This court has interpreted the words 'legal or equitable relief' to include punitive damages under the FLSA."). *But see Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928, 933-35 (11th Cir. 2000) ("[W]e reject [the] argument that 'legal relief' includes punitive damages.").

Even presuming punitive damages are available in an FLSA retaliation action, the Court will not award punitive damages against WAP. "[P]unitive damages cannot be awarded simply on the basis of the pleadings, but must instead be established at an evidentiary hearing held pursuant to Fed. R. Civ. P. 55(b)(2) because they clearly are not liquidated or computable." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1152 (3d Cir. 1990) (citations omitted). Because the FLSA does not supply a standard for the imposition of punitive damages, "[c]ourts have often relied on the standard articulated in 42 U.S.C. § 1981a(b)(1), which governs various federal employment discrimination statutes." *Greathouse v. JHS Sec. Inc.*, No. 11 Civ. 7845, 2015 WL 7142850, at *7 (S.D.N.Y. Nov. 13, 2015), *report and recommendation adopted by Greathouse v. JHS Sec., Inc.*, 2016 WL 4523855 (S.D.N.Y. Aug. 29, 2016). Section 1981a(b)(1) authorizes

punitive damages if the defendant "engaged in [discrimination] with malice or with reckless indifference to the federally protected rights of an aggrieved individual."

At the damages hearing, Plaintiff's counsel asserted that punitive damages are warranted because WAP has a pattern of failing to pay its employees proper compensation and has used the threat of bankruptcy in other litigation for improper delay.  The Court cannot award punitive damages based solely on these bald allegations from counsel.  These allegations also cannot support punitive damages because they are unrelated to the retaliation claim.  The statutory basis for punitive damages under the FLSA is tied to retaliation.  *See* 29 U.S.C. § 216(b).  FLSA punitive damages therefore must be related to WAP's conduct in retaliating against Oliver.  Based on the testimony at the hearing, the Court does not have sufficient evidence to find WAP retaliated against Oliver with malice or with reckless indifference and thus cannot authorize punitive damages in this case.  *See, e.g*, *United States ex rel. Motley v. Rundle*, 340 F. Supp. 807, 811 (E.D. Pa. 1972) ("Plaintiff cannot simply rely on the default judgment with its necessary admission by the defendants of an equal protection violation for a claim of punitive damages.").

The Supreme Court and the Third Circuit also have yet to decide whether emotional distress damages are recoverable in an FLSA retaliation action, but district courts within the Third Circuit have suggested the FLSA allows these types of damages.  *Short-Irons v. Catham Acres Healthcare Grp., Inc.*, No. 18-5136, 2019 WL 3936356, at *4 (E.D. Pa. Aug. 20, 2019) (denying motion to dismiss and acknowledging that "FLSA retaliation plaintiffs may pursue compensatory damages for emotional distress, at least through the motion to dismiss stage"); *Jones v. Amerihealth Caritas*, 95 F. Supp. 3d 807, 818-19 (E.D. Pa. 2015) ("Guided by the Supreme Court's statement that the FLSA is 'remedial and humanitarian in purpose' and it is not to be 'interpreted or applied in a narrow, grudging manner', we find that at this stage in the proceeding, [Plaintiff]

8

may pursue compensatory damages for emotional distress." (quoting *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944))). Other circuits seem to agree with this position. *Travis v. Gary Cnty. Mental Health Ctr., Inc.*, 921 F.2d 108, 110 (7th Cir. 1990) ("Compensation for emotional distress, and punitive damages, are appropriate for intentional torts such as retaliatory discharge."); *Moore v. Freeman*, 355 F.3d 558, 563-64 (6th Cir. 2004) (finding the FLSA "allows for damages for mental and emotional distress" for retaliation claims).

Assuming emotional distress damages are available in an FLSA retaliation action, the Court will not award these damages to Oliver. Oliver testified at the damages hearing that he was "upset" after being terminated. He could not elaborate on this feeling in any detail, even when pressed by his own counsel, beyond saying his termination made him feel "sad." Oliver also pointed to having to sell his car, being stressed, moving out of his apartment into his mother's house, and breaking up with his girlfriend as consequences of his termination. This Court, however, finds this evidence to be insufficient to warrant emotional distress damages. *See Bolden v. Se. Pa. Transp. Auth.*, 21 F.3d 29, 33 (3d Cir. 1994) (recognizing the Third Circuit will reject an emotional distress award when "the only evidence supporting the award consisted of the plaintiff's testimony that he was 'very upset,' felt he 'had been done wrong' and thought he 'had been treated unfairly' in being passed over for a promotion" (citing *Gunby v. Pa. Elec. Co.*, 840 F.2d 1108 (3d Cir. 1988))); *Spence v. Bd. of Educ. of Christina Sch. Dist.*, 806 F.2d 1198, 1201 (3d Cir. 1986) (holding evidence consisting "chiefly of plaintiff's own testimony that she was depressed and humiliated by the transfer and that she had lost her motive to be creative" was too speculative to support emotional distress damages).

Finally, the FLSA mandates that the "court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs

9

of the action." 29 U.S.C. § 216(b). Oliver's counsel Mary Kramer provided detailed billing records which indicate she has accrued $10,761.25 in attorneys' fees and $1,043.95 in costs. *See* Dkt. No. 33-1. The Court finds this amount to be reasonable under the lodestar: "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."[4] *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). So, Oliver will also be entitled to this amount of money in attorneys' fees and costs.

**CONCLUSION**

Because Oliver will be prejudiced if default is denied, WAP does not appears to have a litigable defense, and WAP's default is due to its culpable conduct, the Court will grant default judgment in favor of Oliver. The Court will award Oliver $229,038.20 in damages to compensate for his unpaid overtime compensation, liquidated damages, back pay, and attorneys' fees and costs, but not for any emotional distress or punitive damages.

An appropriate order follows.

BY THE COURT:

 /s/ Juan R. Sánchez
Juan R. Sánchez, J.

---

[4] A reasonable hourly rate should be "calculated according to the prevailing market rates in the relevant community." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). In Philadelphia, the Community Legal Services (CLS) fee schedule is regarded as "a fair reflection of the prevailing market rates." *Maldonado v. Houstoun*, 256 F.3d 181, 187 (3d Cir. 2001). Plaintiff's counsel billed at the rate of $375.00 per hour, which is within the CLS fee schedule for an attorney of her experience. She expended around 28.7 hours in this litigation. The Court finds both the number of hours expended on this litigation and the hourly rate are reasonable.